UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division – In Admiralty

| | |
|---|---|
| In Re: Application of Consol Pennsylvania Coal Company, LLC<br><br>Applicant,<br><br>For Order Authorizing Discovery Pursuant to FRCP RULE 27 And/ Or For Use In Foreign Proceedings Under 28 U.S.C. § 1782. | Case No. 2:25-mc-6<br><br>**EMERGENCY VERIFIED PETITION FOR AN ORDER TO PRESERVE TESTIMONY AND EVIDENCE PURSUANT TO FED. R. CIV. P. 27 AND *EX PARTE* APPLICATION TO OBTAIN ORDER FOR DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782** |

Petitioner and applicant, Consol Pennsylvania Coal Company, LLC ("Consol"), by and through its undersigned counsel, respectfully submits this emergency verified petition pursuant to Rule 27 of the Federal Rules of Civil Procedure and *ex parte* application for an order for discovery for use in foreign proceedings pursuant to 28 U.S.C. §1782. As set forth below, the Court should issue an order pursuant to Rule 27 to preserve testimony and evidence, or, alternatively, issue an order pursuant to 28 U.S.C. § 1782 to enable discovery for use in foreign proceedings authorizing discovery, including document production, depositions, and a detailed inspection of the vessel at issue by qualified experts while the vessel remains within this District and before repairs commence.

I.  **INTRODUCTION**

Petitioner and Applicant Consol Pennsylvania Coal Company, LLC (Consol") is a mining company. This Petition and Application arises from a dispute between Consol and other interested parties regarding an explosion and fire in a cargo of approximately 104,522 metric tons of coal currently on board the M/V ANGLO MARIE LOUISE (the "Vessel"), owned by Anglo Marie Louise Shipping Limited, and chartered by SwissMarine PTE Limited, temporarily at anchorage within the waters of the Eastern District of Virginia. Consol respectfully requests (1) an Order

pursuant to Rule 27 of the Federal Rules of Civil Procedure to preserve testimony and evidence, or in the alternative (2) an Order pursuant to 28 U.S.C. § 1782 to enable discovery for use in foreign proceedings authorizing discovery, including document production, depositions and a detailed Vessel inspection by qualified experts, while the Vessel remains within this District and before repairs commence.

## II. STATEMENT OF FACTS

### A. The Transactions

At all relevant times, the Vessel was on time charter from the owner Anglo Marie Louise Shipping Limited to the time charterer SwissMarine PTE Ltd. That charterparty contains a London arbitration clause subject to English law. *Declaration of Jonathan Thames in Support of Application/Petition ("Thames Decl.")* at ¶ 8 (with Exhibits A-D as referenced therein) attached hereto as **Exhibit 1**.[1]

On or about October 9, 2024, Consol entered into Purchase Order No. 06-2024IT to sell 75,000 – 100,000 metric tons +/- 10% of Bailey High Volume Coking Coal to Itochu Singapore Pte Ltd ("Itochu"). *Id.* at ¶ 3. The Purchase Order contains an arbitration clause stating, "all claims, disputes, or controversies arising out of or referring to this Agreement," will be arbitrated in New York applying US law. *Id.* at ¶ 3, 8.

Itochu[2] sold the coal to Pacific Minerals Limited. Pacific Minerals' shipping affiliate PSL Shipping Limited thereafter entered into a voyage charterparty with SwissMarine Pte Ltd to deliver the coal from Baltimore, Maryland to a port in China. *Id.* at ¶ 4. The charterparty between PSL and SwissMarine, unlike the Consol-Itochu purchase order or the Angle Marie Louise-SwissMarine time charter, requires that any dispute between those parties be arbitrated in Hong Kong using English law. *Id.* at ¶ 4.

---

[1] References herein to the Thames Declaration also refer to, when applicable, the exhibits cited in the paragraph of the Declaration that is referenced herein.
[2] Itochu essentially acted as a broker, selling the coal it bought from Consol to third party buyer Pacific Minerals even before the Vessel arrived at the Port of Baltimore.

Consol delivered the coal at the Port of Baltimore. On November 23, 2024, the cargo was loaded onboard the M/V ANGLO MARIE LOUISE Free On Board Trimmed (FOBT). *Id.* at ¶ 5. At that point, title to the coal transferred to purchaser Itochu which then in turn transferred to Pacific Minerals. *Id.*

### B.     The Incident and Subsequent Repairs

On or around November 27, 2024, the Vessel was about 105 miles east of the North Carolina Outer Banks. *Id.* at ¶ 6. At 3:10 a.m. an explosion occurred in or around cargo holds 1 and 2, causing significant damage to the hatch coverings and related machinery. *Id.*

After this incident, the Vessel headed to Norfolk, Virginia, where it remains. *Id.* at ¶ 7. The Vessel's hatch covers and related machinery need significant repairs, and these repairs will all be subject to approval by the U.S. Coast Guard as well as the Vessel's classification society. *Id.* These repairs are necessary before the Vessel can depart U.S. waters. *Id.* On information and belief, there is presently no repair plan, but it is likely the Vessel will have to leave this District in order to offload the cargo and have repairs made. *Id.* at ¶ 7, 12.

### C.     The Foreign Proceedings

There are several possible foreign proceedings here. First of all, the Anglo Shipping-SwissMarine charterparty calls for London arbitration under English law. Second, the Consol-Itochu Purchase Order requires New York arbitration. Finally, the SwissMarine-PSL voyage charterparty calls for Hong Kong arbitration under English law. *Id.* at ¶ 8.

### D.     Consol's Informal Efforts to Obtain Discovery

The cause of the explosion/source of ignition remains at issue. Over the two months that the Vessel has been anchored at Cape Charles, Virginia, the parties have cooperated on conducting several *limited* inspections. *Id.* at ¶ 9. On or about January 15, 2025, Consol requested access to inspect 20 items related to gas ventilation, gas monitoring, and potential ignition sources prior to its fire expert, Paul Willis of Hawkins Ltd., arriving at the Vessel from Bristol, England. *Id.* Vessel owners, though, only permitted Mr. Willis to make visual observations on deck and refused him access to the hatches and other areas, including access to any documentation kept onboard the

Vessel in the normal course. *Id.* at ¶ 10. Vessel owners granted Mr. Willis permission to visually inspect ventilation points in holds 1 and 2, as well as some (but not all) electrical switches and panels near those holds, but he was not allowed to test or operate any of these devices. Mr. Willis was not permitted in the engine room, the bridge, parts of the forecastle, and other areas germane to his investigation. *Id.*

Vessel owners have also refused to allow crew depositions, production of all requested documents, or an inspection of relevant Vessel conditions and systems per Mr. Willis's specifications. *Id.*

On or around March 7, 2025, Vessel owners granted cargo owner Pacific Minerals access to the cargo to test its methane properties. This testing concluded on March 11, 2025. While gas level testing is one of the inspections that the parties had requested, there is much more that needs to be done before the Vessel leaves, as outlined in Consol's communications to Vessel owners. *Id.* at ¶ 11.

### E. Jurisdiction and Venue

The vessel is currently at temporary anchorage in Cape Charles, Virginia, which is within the bounds of the Eastern District of Virginia. *Id.* at ¶ 12. Once the Vessel leaves the Cape Charles anchorage, Consol will likely be deprived of this practical and reasonable opportunity to inspect the Vessel and obtain evidence necessary to protect its interests in the potential arbitration proceedings in Hong Kong, as well as the prospective proceedings in Virginia, New York and/or London. Although the Vessel's repair date is unknown at this time, the repairs will take place outside the district, therefore Consol requests the opportunity to inspect the Vessel while it is anchored at Cape Charles. Consol commits to obtain all discovery swiftly and without impact on the Vessel's operations. *Id.* at ¶ 12.

### F. Consol also Filed a Declaratory Judgment Action and a Request for a Preliminary Injunction

Consol has filed a Complaint for Declaratory Judgment and Request for Injunctive Relief in the United States District Court for the Eastern District of Virginia, Norfolk Division, seeking a judicial determination that Consol is not contractually bound to arbitrate this dispute in Hong

Kong because it is not a party to any arbitration agreement with Anglo. *See* Complaint (Doc. 1), *Consol Pennsylvania Coal Company, LLC v. Anglo Marie Louise Shipping Limited*, No. 2:25-cv-145 (filed on 3/12/25). In that action, Consol further seeks to enjoin Anglo from proceeding with arbitration in Hong Kong. *Id.*; *Thames Decl.* at ¶ 14.

### III. ARGUMENT

#### A. Consol is Entitled to an Order Pursuant to Rule 27

Rule 27 of the Federal Rules of Civil Procedure provides a mechanism to preserve testimony for use in an action or proceeding not presently pending but expected to be filed in the future. *See Ash v. Cort*, 512 F.2d 909, 911 (3d Cir.1975). The Rule states, "A person who wants to perpetuate testimony about any matter cognizable in a United States may file a verified petition in the district court for the district where any expected adverse party resides." Fed. R. Civ. P. 27(a)(1). Rule 27 authorizes pre-lawsuit discovery orders even in cases where the "cognizable" litigation is expected to take place in a state court, foreign court, or arbitration proceeding. Rutter Group Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 11(IV)-A; *see Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra, supra*, 198 F.3d at 479. The Rule is intended to provide aid for the eventual adjudication of the future suit by affording "a simple ancillary or auxiliary remedy" to obtain discovery, via a special proceeding to which "the usual federal jurisdictional and venue requirements do not apply." *Messeller v. United States*, 158 F.2d 380, 382 (2d Cir. 1946).

Rule 27 permits vessel inspection, observation of repairs, and copying of documents from the ship. *In the Matter of the Application of DEIULEMAR COMPAGNIA DI NAVIGAZIONE S.p.A. for the Perpetuation of Certain Evidence v. M/V Alegra*, 198 F.3d, 473, 478-479 (4th Cir. 1999) (affirming district court's order granting the Rule 27 petition and allowing petitioner "and his staff" to "inspect the vessel, observe repairs, and copy documents from the ship.").

To be successful, a Rule 27 petitioner must demonstrate (1) that it expects to be a party to an action that may be cognizable in any court of the United States but the action is unable to be brought presently; (2) the subject matter of the expected action and the petitioner's interest in such

an action; (3) facts which the petitioner seeks to establish through the proposed testimony and the reasons for desiring to perpetuate that testimony at this time; (4) the names or description of the expected adverse parties; and (5) the names and addresses of the witnesses to be examined and the substance of the testimony petitioner expects to obtain from them. Fed. R. Civ. P. 27(a)(1); *Petition of Campania Chilena de Navegacion*, No. 03cv5382, 2004 WL 1084243, *2 (E.D.N.Y. Feb. 6, 2004).

A proceeding to perpetuate does not require an independent basis of federal jurisdiction, but it must be shown that the contemplated action for which the testimony is being perpetuated would be subject to federal jurisdiction. *Dresser Indus. v. United States*, 596 F.2d 1231, 1238 (5th Cir.1979) (citing *Arizona v. California*, 292 U.S. 341, 347 (1934)). Proceedings to perpetuate have been recognized as "cognizable" admiralty cases, and thus subject to federal maritime law. *See, e.g.*, *In the Matter of the Application of DEIULEMAR COMPAGNIA DI NAVIGAZIONE S.p.A. for the Perpetuation of Certain Evidence v. M/V Alegra*, 198 F.3d, 473, 479 (4th Cir. 1999) (affirming district court's grant of Rule 27 discovery in aid of charterers' potential arbitration with shipowner where, as here, vessel was about to leave United States waters); *Petition of Raffles Shipping Int'l Pte Ltd.*, 2010 WL 819820 (E.D. La. Mar. 4, 2010) (Rule 27 discovery in aid of charterers' potential arbitration with shipowner ordered where vessel was about to leave U.S. port); *Campania Chilena de Navegacion*, 2004 WL 1084243 (Rule 27 discovery in aid of charterers' defense of potential claims by cargo interests as a result of fire where vessel was about to leave U.S. port); *Phibro Commodities v. M.V. Rizcun Trader*, 1997 WL 583206 (E.D. Pa. Mar. 26, 1997) (Rule 27 discovery in aid of cargo interests' action for damages in other forum, as well as security where vessel was about to leave U.S. port); *In re Deiulemar Di Navigazione S.p.A*, 153 F.R.D. 592, 1004 A.M.C. 2250 (E.D. La. 1994) (Rule 27 discovery in aid of charterer's indemnification claim in arbitration where vessel was about to leave U.S. port); *Ferro Union Corp. v. S.S. Ionic Coast*, 43 F.R.D. 11, 14 (S.D. Tex. 1967) (allowing depositions, inspection of the vessel and its cargo, and production of requested documents because "[t]o deny discovery here could well mean that the information sought would never be available..."); and *Koch Fuel Int'l v. M/V SouthStar*,

6

118 F.R.D. 318, 320 (E.D.N.Y. 1987) ("[o]ne of the 'exceptional circumstances' in which discovery has been deemed proper is where a vessel with crew members possessing particular knowledge of the dispute is about to leave port").

In circumstances where a vessel was expected to leave the court's jurisdiction or similar emergencies, courts have granted similar petitions without strict adherence to the twenty-day notice provision of Rule 27. *See In re Deiulemar Di Navigazione S.p.A*, 153 F.R.D. at 593; *In re Petition of Chao*, 2008 WL 4471802 (N.D. Iowa Oct. 2, 2008) (allowing two days' notice).

Here, Consol has satisfied the requirements of Rule 27.

First, Consol expects to be made a party to arbitration and/or litigation in multiple fora, including the United States, London, and/ or Hong Kong. (Exhibit 11- Time Charter–London arbitration; Exhibit 2 - Itochu / Consol Purchase Order – New York arbitration; Exhibit 5 - Swiss Marine and PSL Voyage Charter– Hong Kong arbitration). Fed. R. Civ. P. 27(a)(1)(A).

As to the second and third requirements, the requested discovery and inspection seek to preserve the facts and circumstances surrounding the ultimate issues in litigation arising out of the November 27, 2024, incident. Fed. R. Civ. P. 27(a)(1)(C). The parties dispute whether the coal is safe, and whether each discharged its duties (if any) to the other. *Thames Dec.* at ¶ 6.

As to the third and fifth requirements of a Rule 27 petition, Consol seeks an order allowing it to inspect the Vessel prior to repair, to depose the master and crew located on the Vessel, and to gather and copy relevant documents maintained only on the Vessel. The Vessel is currently within the physical boundaries of Virginia's Eastern District. *Thames Decl*. at ¶ 12. The Vessel is expected to undergo repairs near Charleston, South Carolina. *Id.* The Vessel's 25 crewmembers, hailing from the Philippines, India, Ukraine, Sri Lanka and the UK, are likely to have information relating to the explosion, and once they leave the District they will be outside the Court's jurisdiction. Consol also has a litigation interest in inspecting the Vessel prior to repair, so that the parties can preserve evidence of damage, and determine cause and origin of the explosion.

As to the fourth requirement, the expected adverse party is the Vessel owner, Anglo Marie Louise Shipping Limited, on information and belief a UK company, which has local

counsel for this matter: Mark Newcomb, Woods Rogers PLC, 101 West Main Street, Suite 500 Norfolk, Virginia 23510.

### B. In the Alternative, Consol Is Entitled to an Order Enabling Discovery for Use in a Foreign Proceeding under 28 U.S.C. § 1782.

In the alternative, Consol seeks discovery pursuant to the provisions of 28 U.S.C. § 1782 for use in the anticipated foreign litigation proceedings against the Vessel ownership interests in Hong Kong and/or London per the applicable contracts. Three elements must be satisfied before 28 U.S.C. § 1782 may be invoked: (a) the person from whom discovery is sought resides, or can be found, in the district where the application is made, (b) the discovery is for use in a proceeding before a foreign tribunal, and (c) the application is made by "any interested person." *In re Dubey*, 949 F. Supp. 2d 990, 992 (C.D. Cal. 2013); *see also* 28 U.S.C. § 1782(a). In addition to the statutory requirements, discretionary factors must also weigh in favor of granting the application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 263 (2004); *see Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016).

#### 1. The Application meets the statutory requirements for § 1782 discovery.

The Vessel (and hence the documents and evidence onboard) is currently in the federal anchorage off Cape Charles, Virginia. Consol's best, and perhaps last, opportunity to inspect the Vessel, preserve evidence, and depose crewmembers (none of whom reside in the US) is while the Vessel is anchored at Cape Charles. The persons from whom the discovery is sought are and will be found within this District.

The requested discovery is intended for use in a proceeding in a foreign or international tribunal. The foreign proceeding for which a court may authorize discovery need not be "pending or imminent," but simply "within reasonable contemplation." *Intel Corp. supra,* 542 U.S. at 258, 259. Although "[t]he future proceedings must be more than speculative," it suffices that the district court has sufficient indication that a foreign proceeding "would eventuate in which the evidence gathered can be weighed impartially." *See In re Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA) Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014). Here, the fruits of the

inspection and depositions are to be used in litigation or arbitration in Hong Kong and/or the UK, clearly proceedings in foreign tribunals.

Finally, the term "interested person" should be interpreted broadly, and includes both litigants and other parties who have a reasonable interest in obtaining judicial assistance. *Intel*, *supra*, 542 U.S. at 256–57. Consol as a likely litigant is undoubtedly an "interested person" under § 1782.

### A. Vessel Owners Misinterpret Section 1782 Precedent to Deny Consol's Request.

Consol petitions this Court for an order allowing it to inspect the Vessel and depose its crew because the Vessel owner refused Consol's earlier requests, relying on *ZF Automotive US, Inc. v. Luxshare, LTD* ("ZF"). In *ZF Automotive,* the Supreme Court held that 28 U.S.C. § 1782 only applies to a governmental or intergovernmental adjudicative body exercising authority conferred by one nation or multiple nations. The Court determined Luxshare could not use 28 U.S.C. § 1782 because the parties agreed to private binding contractual arbitration in Germany without right of appeal. *ZF Auto. US, Inc. v. Luxshare, Ltd.,* 596 U.S. 619, 142 S. Ct. 2078, 213 L. Ed. 2d 163 (2022).

The circumstances of *ZF* do not support denying Consol's application and motion here. Unlike the binding and unappealable decision under private contractual arbitration in *ZF*, under the Arbitration Act 1996 (English law used in both charter parties) any potential arbitral award would be subject to judicial review based on procedural, jurisdictional, or substantive grounds. Per the holding in *Ex rel. Application of Winning (HK) Shipping CO. LTD.,* arbitration under English law in London or Hong Kong would be a foreign tribunal, rendering 28 U.S.C. § 1782 applicable. *Ex rel Application of Winning (HK) Shipping Co. Ltd.,* No. 09-22659-MC, 2010 WL 1796579 (S.D. Fla. Apr. 30, 2010); *see also In re Ex Parte Application of Kleimar N.V.,* 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016); *In re Owl Shipping, LLC,* No. CIV.A. 14-5655 AET, 2014 WL 5320192 (D.N.J. Oct. 17, 2014).

### B. The § 1782 discretionary factors also weigh in favor of granting the Application.

To determine whether discovery should be permitted, the Court should consider the following non-exhaustive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding, and whether the foreign court is receptive to judicial assistance from the United States; (3) whether the discovery request is an attempt to avoid foreign evidence-gathering restrictions; and (4) whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–66. "The district court [is] not required to address explicitly every factor or argument, nor [is] it required to issue a written order." *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (citing *United States v. Sealed 1*, 235 F.3d 1200, 1206 (9th Cir. 2000)) (noting the broad discretion afforded the district courts under § 1782 and the lack of specific guidance on how to exercise that discretion).

Starting with the first factor, the need for § 1782 assistance is of particular importance when the entity from which discovery is sought is a non-party in the underlying foreign proceeding: "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Here, the Vessel is present in this District. The information Consol seeks by inspecting the Vessel and taking crew depositions is of the sort and type that will only be available for a finite period of time: The Vessel will eventually head to Charleston, South Carolina for extensive repairs, destroying valuable evidence. Absent an order from this Court compelling the requested documents, depositions and inspection, Consol will lose its sole opportunity to preserve critical evidence for use in the anticipated foreign litigation proceedings.

The second factor takes into account the "nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign court to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "When evaluating whether foreign tribunals would accept U.S. assistance, courts look for authoritative proof that a foreign tribunal would reject evidence obtained

with the aid of section 1782." *Siemens AG v. W. Digital Corp.*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013). The burden of demonstrating that the foreign tribunal would be unreceptive to the evidence rests with the party opposing the application. *See In re Bayer AG*, 146 F.3d 188, 196 (1998); *see also In re Owl Shipping, LLC*, No. CIV.A. 14-5655 AET, 2014 WL 5320192, at *2 (D.N.J. Oct. 17, 2014). Here, there is no allegation and certainly no "authoritative proof" that potential proceedings in London and/or Hong Kong, applying English law, would reject the evidence Consol seeks.

Under the third discretionary factor, the Court needs to weigh if the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Courts concentrate on the apparent *motivation* for the request, and not on foreign discovery rules that parties seldom have on hand. *E.g.*, *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016). Section 1782 does not contain a requirement that the information sought be discoverable under the law governing the foreign proceeding. *Mak v. For the Issuance of Discovery in ex rel. Foreign Proceeding Pursuant to 28 U.S.C. 1782*, 2012 WL 2906761 (N.D. Cal. July 16, 2012). Here, there is no evidence that Consol's motivation here is to get around foreign proof-gathering restrictions. Indeed, Consol's sole motivation is the preservation of evidence for use in a foreign tribunal.

The final *Intel* factor contemplates whether the discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In assessing this factor, district courts apply the standards of Rule 26. Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-MC-80153-MEJ, 2018 WL 368766, at *4 (N.D. Cal. Jan. 11, 2018) (concluding that the petitioner's discovery request was overbroad under the standards of Fed. R. Civ. P. 26(b)(1)); *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.").

Under Rule 26, "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends, in part, on "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. However, "the court should be particularly wary of denying [§ 1782] discovery on relevance grounds." *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway,* 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding it "inappropriate" to deny a § 1782 application on relevance grounds "[g]iven the broadly permissive standard by which a court evaluates the relevance of discoverable material, and the parties' presentation of a factual dispute regarding the relevance of the discovery sought.").

As previously noted, the proposed subpoenas set forth a limited number of documents maintained in the normal course of business and are directly relevant to the claims likely to be made in this complex, international multi-party dispute. The crew depositions are similarly limited in scope. If the crew members are not deposed while the Vessel remains in the Court's jurisdiction, they are going to leave the Vessel and thus be unavailable. The Vessel inspection will allow preservation of key evidence from the Vessel before her owners repair the affected areas. Accordingly, all *Intel* factors weigh in favor of granting this § 1782 application.

## IV. <u>CONCLUSION</u>

Once the Vessel departs this Court's jurisdiction, the evidence Consol seeks departs with it. Under the circumstances, this may be Consol's only opportunity to collect the evidence needed to support its claims and defenses in the proceedings in Hong Kong, Virginia, New York and/or London. Consol only advances reasonably limited requests for crew testimony, documents and information, requests which are standard for incidents such as this, and an inspection of relevant areas of the Vessel to assess the cause of the incident. Whether under Fed. R. Civ. P. Rule 27 or 28 U.S.C. § 1782, Consol respectfully requests this Court grant the proposed discovery on an emergency basis.

Respectfully submitted,

**CONSOL PENNSYLVANIA COAL COMPANY, LLC,**

/**s**/ Marissa M. Henderson
       Of Counsel
David N. Ventker (VSB No. 29983)
Marissa M. Henderson (VSB No. 44156)
Ventker Henderson Stancliff, PLLC
256 West Freemason Street
Norfolk, VA  23510
Telephone: (757) 916-4930
Facsimile: (757) 625-1475
dventker@ventkerlaw.com
mhenderson@venkterlaw.com


Jonathan W. Thames (Ca. Bar. No. 242158)
Forrest Booth (Ca. Bar No. 074166)
Brad H. Pace (Ca. Bar No. 302510)
*(Pro hac vice applications forthcoming)*
KENNEDYS CMK LLP
455 Market Street, Suite 1900
San Francisco, CA 94105
T: (415) 323- 4460
F: (415) 323-4445
Jonathan.thames@kennedyslaw.com
Forrest.booth@kennedyslaw.com
Brad.pace@kennedyslaw.com


*Counsel for Consol Pennsylvania Coal Company, LLC*

13

## ATTORNEY VERIFICATION

I, Jonathan W. Thames, hereby declare as follows:

1. I am the attorney for the Applicant/Petitioner and I am authorized to make this Verification on its behalf.

2. I have read the foregoing Application/Petition and the contents thereof are true and accurate to the best of my knowledge, information and belief.

3. The reason that this Verification was made by me and not the Applicant/Petitioner is that it is a legal entity, and it does not have officers present in this District.

4. The source of my knowledge is information and records furnished to me by the Applicant/Petitioner and its representatives, all of which I believe to be true and accurate.

I declare under penalty of perjury under the laws of the Unites States of America and the State of California that the foregoing statements are true and correct.

Executed in San Francisco, California this 12th day of March, 2025.

_____
Jonathan W. Thames